WILLIAM O'DWYER AND SLOAN O'DWYER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54608, 59475. Filed June 24, 1957.

*Paul O'Dwyer, Esq.*, and *Michael Kaminsky, Esq.*, for the petitioners.

*John James O'Toole, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* ■ The Commissioner determined that petitioner William O'Dwyer received unreported income in the amount of $10,000 in 1949. The burden of proof was on the petitioner and he neither appeared as a witness nor offered any evidence contradicting the Commissioner's determination.

Although it need not have done so, the Government, goaded by charges of petitioner's counsel that the proceedings were instituted with improper motives and that there was no basis in fact for the deficiencies, undertook to present evidence with respect to this item. Petitioner's counsel subjected the witnesses to a thorough and vigorous cross-examination. We had ample occasion to observe the witnesses and, notwithstanding a few inconsequential inconsistencies in their testimony, we are convinced that they were telling the truth. We are fully satisfied that Crane paid over the $10,000 to the petitioner, as set forth in our findings.

However, the evidence strongly supports the view that Crane intended the payment as a political or campaign contribution. If it were such and were in fact used for such purposes then it would not constitute taxable income. On the other hand, if petitioner retained

the money or diverted it to his own personal use, it would be taxable income to him. The distinction has been plainly set forth in *Manson L. Reichert*, 19 T. C. 1027, affirmed 214 F. 2d 19 (C. A. 7), certiorari denied 348 U. S. 909. See also Rev. Rul. 80, 1954–1 C. B. 11.

The difficulty in the present case is that the record is devoid of evidence showing the disposition of these funds. Petitioner himself was the one person who could throw the most light on this matter. Yet he deliberately chose not to take the witness stand and subject himself to cross-examination. This is a circumstance that cannot be lightly ignored. The burden of proof was upon him, and his failure to meet it calls for the same result that was reached in *Manson L. Reichert, supra*, 19 T. C. at 1039.

Petitioner seeks to justify his failure to present evidence on the ground that the Court improperly denied his motion for an order to direct compliance with a subpoena duces tecum addressed to the Regional Commissioner of Internal Revenue, which in substance requested the Government to produce all of its records and files that were used as a basis for determining the deficiencies in controversy.[1]

The respondent's attorney, although declining to hand over the Government's files, stated that he was not thereby making a blanket refusal to produce specific items. Moreover, the Court made it clear that its ruling was merely a "denial of the broad request * * * for all the papers and all the files relating to these cases," and indicated that it would rule upon requests for specific items when they became pertinent. Some of the items requested by petitioner were made available to him by the Government. On the other hand, the Government refused to surrender the revenue agent's report or, initially, a statement made to the Internal Revenue Service by Crane. The revenue agent's report was part of the Government's confidential file and petitioner was plainly not entitled to have it, without more than a general claim that the deficiencies were arbitrary and that the proceedings were improperly motivated. As to Crane's statement, petitioner's counsel gave no reason at that time for wanting it. When Crane was

---

[1] The subpoena demanded the production of the following:

(1) Complete 1949 and 1950 revenue agents' reports, including the confidential elements thereof.

(2) All of the information from which it was determined that the petitioners understated their 1949 and 1950 income.

(3) All affidavits and all statements or transcripts of statements, under oath or not, submitted or made by the petitioners, to any office or officer of the Internal Revenue Service with respect to their tax liabilities for the years 1949 and 1950.

(4) Transcript of statement of interview with William O'Dwyer, witness, held in room 1007, Intelligence Unit, 253 Broadway, New York, N. Y., on March 28, 1951.

Although the foregoing appear to give some color of compliance with our Rule 44 (c), requiring that the subpoena "shall number, set forth separately, and describe adequately each item to be produced," it is plain, not only from item (2) but also from statements made by counsel during the course of the hearing as well as the accompanying affidavit of counsel, that petitioner was seeking to have "the records and files of the Respondent * * * produced and opened to inspection by the petitioner."

subsequently called as a witness and counsel, on cross-examination, renewed his request for Crane's statement, it was turned over to him for the purpose of exploring possible contradictory statements.

In the circumstances, we conclude that petitioner was without justification in refusing to present evidence on this issue, which must be decided against him for failure of proof.

■ The second issue before us relates to deductions in the amounts of $6,135.94 and $12,266.26 claimed as business expenses of petitioner in connection with his ambassadorial duties in 1950 and 1951, respectively. The deductions were determined in the following manner: Petitioner's accountant used checkbook stubs and certain data sheets to arrive at the totals of petitioner's expenditures for each year; from these totals he subtracted amounts for which petitioner had been reimbursed as well as arbitrary amounts that he treated as personal expenses. The remainders were claimed as deductions on the returns. The following table shows the amounts thus computed:

|  | 1950 | 1951 |
|---|---|---|
| Total expenditures | $7, 678. 63 | $28, 390. 76 |
| Reimbursed | 542. 69 | 10, 124. 50 |
| Unreimbursed | 7, 135. 94 | 18, 266. 26 |
| "Personal" | 1, 000. 00 | 6, 000. 00 |
| Claimed deduction | 6, 135. 94 | 12, 266. 26 |

The Commissioner disallowed the entire $6,135.94 for 1950 and $10,000 of the $12,266.26 claimed for 1951. The disallowances were based upon lack of sustantiation that the amounts represented ordinary and necessary business expenses connected with petitioner's activities as Ambassador. The Government does not challenge the fact that the expenditures in question were actually made. The sole issue is whether they were proximately related to petitioner's duties as an Ambassador or whether they were personal.

Petitioner presented no testimony on this issue and the only materials before us are two joint exhibits detailing the expenditures. In some instances the identification of a particular item enables us to form some judgment as to whether it was personal or not; in many instances it is difficult, if not impossible, to reach a conclusion as to whether or to what extent a given item was personal or related to petitioner's activities as an Ambassador.

The burden of proof was upon petitioner, and the method selected by counsel to discharge that burden was not very helpful to the Court, without a fuller explanation of the numerous items listed on these exhibits and without sworn testimony as to their character. Nevertheless, we must do the best we can with the materials at hand, and taking into account the admonition in *Cohan* v. *Commissioner*, 39 F. 2d 540, 544 (C. A. 2), we have determined that the gross amounts

attributable to petitioner's ambassadorial duties were $2,500 for 1950 and $18,000 for 1951. After deducting therefrom the amounts received as reimbursements in each of these years, petitioners are entitled to deduct as business expenses the amounts of $1,957.31 for 1950 and $7,875.50 for 1951. To the extent that the deductions claimed in their returns for these years exceeded these amounts, the Commissioner's disallowance must be approved.

■ The remaining item in controversy relates to an unexplained deposit of $1,500 made on July 8, 1951, by petitioner Sloan O'Dwyer in a joint bank account in her name and that of her mother, Eleanora Young, with the Chase National Bank. The respondent introduced in evidence the deposit slip which indicates that "Sloan O'Dwyer" made the deposit. The amount of $1,500 is shown thereon opposite the word "Checks." Respondent also introduced in evidence a ledger sheet from the Chase National Bank showing that the amount deposited was credited to the account. The address shown on the ledger sheet is "Embassy Residence, Embassy of the United States, Mexico D. F. Mexico," the address of petitioners.

In determining the deficiency for the year 1951, the respondent made several adjustments, one of which was to add $15,656.48 to the net income reported by petitioners for that year on the ground that it had been understated in this amount. Prior to the trial respondent became satisfied that $14,156.48 of this amount did not represent taxable income, and he conceded that to that extent there was no understatement. This left in issue the amount of $1,500, representing the unexplained bank deposit. The petitioners contend that the respondent's concession of the major portion of the adjustment destroyed any presumption that his determination was correct insofar as the $1,500, not conceded, was concerned. We do not agree. The presumption of correctness of the respondent's determination that the $1,500 was taxable income continued to exist after the concession, just as it would have continued to exist if petitioners had proved at the trial that the $14,156.48 was not taxable to them, and had left unproved the remaining $1,500. The petitioners have not sustained their burden of overcoming this presumption. They introduced no evidence or testimony. They seem content to rely upon the fact that the $1,500 was deposited in a joint bank account. That fact, however, does not establish that the $1,500 which petitioner Sloan O'Dwyer received from some undisclosed source in 1951, and was able to deposit, did not represent taxable income to her which the petitioners should have reported. The facts were peculiarly within her control, and it was incumbent upon her to come forward with some explanation. In the absence of some evidence that the $1,500 did not represent taxable income, we must sustain the respondent's determination in this regard.

*Decisions will be entered under Rule 50.*