CECIL LEON RAMSEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ramsey v. Commissioner
Docket Nos. 8157-76; 9058-77.
United States Tax Court
T.C. Memo 1980-59; 1980 Tax Ct. Memo LEXIS 526; 39 T.C.M. (CCH) 1150; T.C.M. (RIA) 80059; March 4, 1980, Filed Herman D. Brandon, for the petitioner. Osmun Latrobe, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioner's income tax, plus additions to the tax under section 6651(a)(1)[1] for failure to file tax returns, under section 6653(a) for disregard of rules and regulations, and under section 6654 for failure to pay estimated taxes, as follows: Income Tax Year
Deficiency [2]
Sec. 6651(a)(1)
Sec. 6653(a)
Sec. 6654
1968
$19,065.89
$12,266.47
$2,453.29
$ 785.05
1969
10,588.60
529.43
529.43
0
1970
36,657.46
9,164.37
1,832.87
586.53
The issues for decision are: 1. Whether respondent seized petitioner's records and, if so, whether such seizure (a) caused the statute of limitations to begin running as of the date of seizure, or (b) violated petitioner's rights under the Fifth Amendment's due process clause *529 insofar as petitioner could not defend himself without the seized records against respondent's determinations. 2. Whether petitioner had unreported income for 1968, 1969 or 1970. 3. Whether petitioner is entitled to a depreciation deduction in excess of the $561.85 allowed by respondent in 1970. 4.Whether petitioner is liable for the tax on self-employment income for 1968 and 1970. 5. Whether the addition to tax pursuant to section 6651 for failure to file a return is applicable for 1968, 1969 or 1970. 6. Whether the addition to tax pursuant to section 6653 for negligence or intentional disregard of rules and regulations is applicable for 1968, 1969 or 1970. 7. Whether the addition to tax pursuant to section 6654 for failure to pay estimated tax is applicalbe for 1968 or 1970. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. At the time he filed his petitions, petitioner was a resident of West Virginia. 1. 1968
In 1968 petitioner and his wife, Jimmie Grace Ramsey, sold certain West Virginia oil and gas interests to the Yale Oil Association of Oklahoma City for $6,250. The purchaser paid for these *530 interests with a check dated March 15, 1968, payable to Cecil Ramsey and Jimmie Grace Ramsey. In 1968 petitioner sold certain mineral interests located in Georgia for a $9,000 promissory note due October 23, 1968. At maturity the note was paid in full. In the early 1960's, petitioner and his brother formed Ramsey Associated Petroleum Ltd., an Oklahoma corporation engaged in the oil and gas business. In 1968 petitioner received two payments from the corporation totaling $3,356.70. In 1968 petitioner sold a 550 acre tract of land in Southern Georgia for $123,200. The selling price consisted of earnest money of $45,000 received prior to the July 11, 1968, closing date, the assumption of a $43,200 mortgage on the property, the execution of a $15,000 purchase money note, a $19,776.12 check delivered at closing, and the assumption by the purchaser of $223.88 of miscellaneous expenses. Petitioner's basis in the property was $55,000. Petitioner's net earnings subject to self-employment tax exceeded $7,800 in 1968. 2. 1969
On April 14, 1969, petitioner requested an extension of time in which to file his 1968 tax return. The Application for Extension of Time to File *531 (Form 2688) stated that petitioner was "waiting for records to be sent from Oklahoma, and for duplicates from Bank Records lost in moving by Bekins Van & Storage January 3, 1969." The Internal Revenue Service ("IRS") granted an extension until June 16, 1969. Petitioner subsequently recovered his records from Bekins Van & Storage but he never filed a tax return for 1968. In July 1969 petitioner and his wife opened a joint checking account at the Prague National Bank in Prague, Oklahoma. On July 31, 1969, petitioner deposited $39,519.26 into this account. On August 7, 1969, petitioner closed the account. On November 13, 1969, petitioner paid $1,305.55 interest on $25,000 borrowed from Citizens National Bank in Oklahoma City. On June 23, 1970, petitioner mailed to the IRS a Form 1040, United States Individual Income Tax Form, for the taxable year ending December 31, 1969. On the Form 1040 petitioner stated his name, his wife's name, their address, and the names of their five dependents. Petitioner checked the box "Married filing joint return" and wrote across the front of the Form 1040 "No income due to illness." 3. 1970
During March and April 1970 petitioner sold *532 a number of hogs to various purchasers for an aggregate price of $7,150. Petitioner's basis in these hogs was $1,330. During 1970 petitioner maintained a joint bank account with his wife at the First National Bank of Prague. This account reflected unidentified bank deposits in 1970 of $8,717.85.
On July 31, 1969, petitioner and his wife acquired a ranch in Paden, Oklahoma from C.R. and Bobbie Jackson. The $152,880 purchase price included the land plus certain listed personal property. The purchase contract allocated $113,500 to the acquisition of the land and $39,380 to the acquisition of the following personal property: Bermuda grass sprigger
$ 200
D-8 Caterpillar
6,000
2 automatic water tanks
0
1 Round self feeder
0
Irrigation equipment
3,000
2 4-wheel trailers
200
1 hay rake
200
1 small Ford tractor
900
1 large hog feeder
100
2600 bales alfalfa hay
2,600
1 mare and colt
175
1 mare
175
Saddle
80
136 head of cows at $175.00 each
23,800
6 bulls at $325.00 each
1,950
$39,380
On March 3, 1970, petitioner and his wife sold the Paden ranch. [3] The contract for sale provided for the transfer of the land and certain listed personal *533 property. The $196,567 sales price was allocated to the land ($113,725.50), to the listed personal property ($74,841.50) and to the broker's fee ($8,000). [4] In related transactions, petitioner also transferred a truck, miscellaneous farm equipment, diesel fuel, and feeders to the purchasers for additional consideration aggregating $16,793.60. The following represents a breakdown of the total consideration received on the sale of the Paden ranch: *534 Ranch Contract
Escrow payment - March 3, 1970
$ 10,000
Check March 26, 1970
39,875
Assumption of petitioner's notes
38,350
held by First National Bank,
Parague, Oklahoma
Assumption of petitioner's note
18,227
held by Federal Land Bank
Assumption of petitioner's note
90,115
held by C.R. and Bobbie Jackson
Total Amount Received for Ranch
and Listed Personal Property
196,567 [5]
Additional Personal Property (paid by
check)
Miscellaneous farm equipment
$ 12,714.00
1/2 ton truck
4,000.00
Diesel fuel
29.60
Feeders
50.00
Total Consideration Received for
Additional Personal Property
16,793.60
Total Consideration Received for
Ranch and Related Transactions
$213,360.60
Petitioner's net earnings subject to self-employment tax exceeded $7,800 in 1970.
On May 7, 1971, an accountant filed an Application for Extension of Time to File on petitioner's behalf for 1970. The Application stated that "Taxpayer's wife left in March and either took or destroyed several *535 months business records which are integral to the accurate determination of taxable income. Upon discovering loss of records, taxpayer requested banks (Oklahoma and Florida) to provide photostats of cancelled checks and bank statements. But same have not been received." The Application indicated that petitioner had not applied for an extension during the last three years. The IRS granted petitioner an extension until June 15, 1971. Sometime prior to June 21, 1971, petitioner recovered his records from his estranged wife. Petitioner never filed a 1970 tax return. During 1970 and 1971 petitioner and his wife owned a residence in Venice, Florida. [6] He and his family (his wife and six children) lived in that residence during those years. [7]
4. Seizure of real property. In June 1971 the IRS notified petitioner by letter that he owed taxes and penalties relating to years prior to 1968. The IRS demanded payment of the delinquent taxes and penalties and warned that failure to pay would result in the seizure of petitioner's house. After *536 an unsuccessful attempt to borrow money to pay the delinquency, petitioner traveled to Oklahoma City to ask the IRS for an extension of time.The IRS denied this request. On June 22, 1971, the IRS seized petitioner's personal residence and mailed to petitioner a Notice of Seizure pursuant to section 6335(a). [8] The notice was signed by Herbert Hill, Jr. ("Hill"), the revenue officer assigned to collect petitioner's delinquent taxes.
*537 The seizure of petitioner's residence by the IRS did not interfere with petitioner's access to the premises. The seizure was directed solely at petitioner's real property; no seizure of petitioner's personal property was intended or effected. Hill complied with the seizure procedures of the IRS. After the seizure of the residence, petitioner and his family moved to Oklahoma City leaving all their personal property in the Florida home. On September 22, 1971, the IRS sold the seized property in an administrative sale for $1,800. [9] The property was subsequently redeemed on October 15, 1971, by the holder of the second mortgage. In his statutory notices of deficiencies covering petitioner's 1968, 1969 and 1970 tax years, respondent determined that petitioner had unreported income of $86,582.82 in 1968, $39,500 in 1969, and $72,260 in 1970. Respondent allowed petitioner a $561.85 depreciation expense deduction in 1970 for the personal property acquired in the Paden ranch transaction. With respect to petitioner's 1968 and 1970 tax years, respondent determined that petitioner *538 had at least $7,800 of self-employment income subject to tax under section 1401. In addition to the above deficiencies, respondent determined that petitioner is subject to additions to the tax for failure to file (1968, 1969 and 1970), additions to the tax for negligence (1968, 1969 and 1970), and additions to the tax for failure to pay estimated income tax (1968 and 1970). OPINION 1. Seizure of petitioner's real property. The first issue for decision is whether respondent is barred from asserting deficiencies for 1968, 1969 and 1970. At trial petitioner filed a "Motion to Dismiss" in which he asserted two grounds for dismissal relating to the seizure of his property by the Internal Revenue Service ("IRS") pursuant to section 6331. [10] First, petitioner contends that the statute of limitations with respect to 1968 and 1970, although otherwise suspended due to petitioner's failure to file returns for those years, should nevertheless be considered to have begun running as of June 22, 1971. Petitioner alleges that on that date respondent seized all his tax records and, therefore, petitioner was subsequently precluded from filing his 1968 and 1970 returns.Consequently, *539 petitioner argues that respondent should be equitably estopped from the tolling of the statute of limitations. Second, petitioner states that he is unable to refute the 1968, 1969 and 1970 tax deficiencies because of respondent's alleged seizure of his records. Petitioner contends that to proceed with the trial under these circumstances would be a violation of his rights under the due process clause of the Fifth Amendment. Respondent disputes both the factual premise of petitioner's arguments and the substantive legal analyses behind those arguments. Because we find that respondent did not seize petitioner's records or otherwise deny him access to his records, we do not reach the legal issues. *540 According to petitioner's testimony the following chain of events occurred in June 1971: (1) petitioner received notice that his home in Venice, Florida would be seized by the IRS unless his pre-1968 tax delinquency was paid; (2) petitioner traveled to Oklahoma City ("first trip") with his children to request an extension of time for payment from the IRS district director; (3) petitioner returned to Venice after his request was denied; (4) upon his arrival home petitioner was barred from his property by chains placed at both entrances (these chains were accompanied by IRS posters prohibiting anyone from entering the property); and (5) petitioner immediately returned to Oklahoma City ("second trip") with his children because they had no place to live. Petitioner's Venice home was subsequently sold by the IRS at public auction. Petitioner never returned to the Venice home after his second trip to Oklahoma City. Petitioner testified that all of his family's personal property, except the clothes they took on their first trip to Oklahoma City, was in the Venice home and that none of it was ever recovered from the IRS. Petitioner further testified that the unrecovered property included *541 his tax records which he kept in a file cabinet in the house. The only action allegedly taken by petitioner to recover any of the items in the Venice home was a request he made to the district director in Oklahoma City for the return of the personal property. Petitioner has failed to convince us that the IRS seized his personal property, including his tax records, or that the IRS was responsible in any way for the disppearance of those records. This conclusion is based on a number of facts. Petitioner relied solely on his uncorroborated testimony to support his allegations against the IRS. We found that testimony to be vague, confused, inaccurate and inconsistent. Moreover, petitioner's conduct does not indicate that his personal property was seized. Petitioner testified that at the time of the alleged seizure, he and his family had in their possession only the clothes they took to Oklahoma City. Presumably, every other possession was in the house when it was seized. Despite this, petitioner took no serious administrative or judicial action to secure the return of his family's personal property. [11] Even if the property were seized, petitioner and his family would have been *542 entitled to reclaim those items exempt from levy under section 6334. [12] Petitioner, however, did not avail himself of this provision. In contrast to petitioner's testimony, we found the testimony of respondent's witness, Herbert Hill, Jr., ("Hill") to be completely credible. Hill, a veteran revenue officer, testified that he alone was assigned to collect petitioner's pre-1968 tax delinquency; no other IRS employee was authorized to deal with petitioner's property. According to Hill the only property seized from petitioner *543 was his real property, i.e., his house. No seizure of petitioner's personal property was intended or effected. In effecting the seizure of petitioner's real property, Hill merely mailed the notice of seizure to petitioner. At no time did hill visit petitioner's property, nor did he do any acts, such as chaining the entrances, which would have denied petitioner access to his property. [13] Furthermore, Hill's uncontradicted testimony indicated that IRS procedures in effect at that time made it procedurally impossible to bar petitioner from his house. Nothing has come to the Court's attention which would cause us to doubt that IRS procedures were strictly adhered to in petitioner's case and we have so found. [14]
*544 Moreover, not only did IRS procedures prohibit exactly what petitioner claims did occur, but section 6335(a) would have required the notice of seizurer to contain "a list sufficient to identify the [personal] property seized." In preparation for trial, petitioner requested respondent to produce a copy of a list of personal property seized from eptitioner. Respondent replied that he was unable to locate any such document. In light of (a) the statutory mandate to prepare a list of personal property seized, (b) the existence of IRS procedures in conformity with the statute, [15] (c) our belief that Hill complied with IRS procedures, the logical explanation for the absence of any list is that no personal property was ever seized. Petitioner dwells on the fact that Hill could not have known whether petitioner was chained out of his residence since Hill never visited the premises at the time of the seizure. This argument is unconvincing in light *545 of the fact that it is petitioner's burden to prove that the residence was chained rather than respondent's burden to prove that it was not. Moreover, the seizure of the real property did not require Hill's presence and, consequently, it is not surprising that he never visited the site. After careful consideration of the record in this case and the conflicting testimony of the witnesses, we have found that petitioner's personal property, including his tax records, was never seized by respondent. Therefore, we deny petitioner's motion to dismiss. 2. Unreported income. The second issue for decision is whether petitioner received unreported income in 1968, 1969 or 1970. Petitioner filed no income tax returns for 1968 and 1970. He filed a return stating "No income due to illness" in 1969. He produced no tax records for 1968, 1969 or 1970. During 1968, 1969 and 1970 petitioner engaged in a number of transactions involving real property and mineral interests. Respondent used these transactions, together with the bank deposit method, to reconstruct petitioner's income for these years. *546 Respondent is given "great latitude" in determining taxable income when the taxpayer has filed to returns or a totally inaccurate return and has kept no records from which his true income can be determined. Giddio v. Commissioner,54 T.C. 1530, 1532-1534 (1970). Respondent is not required to use any particular method but may use any reasonable method which clearly reflects the taxpayer's income, Harbin v. Commissioner,40 T.C. 373, 377 (1963), including the bank deposit method, O'Dwyer v. Commissioner,28 T.C. 698 (1957), affd. 266 F. 2d 575 (4th Cir. 1959), cert. denied 361 U.S. 862 (1959). [16] Respondent's determination is prima facie correct and petitioner has the burden of showing it is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioner has introduced *547 no evidence to rebut respondent's reconstruction of income. Rather, petitioner relied solely on his assertion that respondent's seizure of his tax records precluded respondent from assessing the deficiencies. Petitioner did not introduce any evidence about any of the transactions or bank deposits on which the deficiencies were based nor did petitioner offer any substitute records in lieu of those allegedly seized. In light of petitioner's failure to meet his burden, we find that petitioner had unreported income in 1968, 1969 and 1970 in the amounts set forth below. [17]
In 1968 petitioner had unreported income of $86,806.70. This consisted of the following itrms: (1) the sale of mineral interests in two properties for a total of $15,250 (petitioner offered no evidence of his bases in these interests or his holding period); (2) the receipt of $3,356.70 from Ramsey Associated *548 Petroleum Ltd., an Oklahoma corporation petitioner co-founded; and (3) the proceeds of the sale of a tract of land for $123,200 less the $55,000 basis which respondent concedes. Petitioner offered no evidence of how long he held this land prior to its sale. In 1969 petitioner had unreported income of $39,519.26. This arose from a bank deposit in petitioner's joint account at the Prague National Bank. [18] In his petition and on brief petitioner claimed that this amount represented the proceeds of the sale of a residence he owned in Jacksonville, Florida, which he sold at a loss. Petitioner, however, offered no proof to substantiate this claim, nor did petitioner offer any evidence indicating that these funds were derived from a nontaxable source. In November 1969 petitioner paid $26,305.55 to Citizens National Bank in repayment of a $25,000 loan. The $1,305.55 difference represented interest on the loan which respondent did not incorporate into his deficiency calculation. Since the $1,305.55 interest expense deduction exceeds the $1,000 standard deduction used by respondent in his computation of petitioner's 1969 deficiency, *549 petitioner is entitled to the $1,305.55 deduction in lieu of the standard deduction. In 1970 petitioner had unreported income from three sources: (1) the sale of hogs; (2) unexplained bank deposits; and (3) the sale of the ranch in Paden, Oklahoma ("Paden ranch"). Petitioner sold hogs to various purchasers for a profit of $5,820 ($7,150 less a $1,330 basis which respondent concedes). Again, petitioner offered to evidence in rebuttal. Unexplained bank deposits of $8,717.85 were made to petitioner's joint account at the First National Bank of Prague. Petitioner offered no evidence as to the source of the deposits or their nontaxable nature. In order to determine the amount and type of gain resulting from the 1970 sale of the Paden ranch it is necessary to allocate the proceeds to the various items sold. Williams v. McGowan,152 F. 2d 570 (2d Cir. 1945). Because the sales contract did not allocate the proceeds to the individual items of personal property sold with the ranch, respondent had to reconstruct an allocation. Respondent prepared his allocation using the following guidelines: (1) for those items of personal property originally acquired with the ranch *550 on July 31, 1969, respondent used petitioner's cost less straight-line depreciation; (2) for those items of personal property that were included in the March 3, 1970 sale but were not among the items acquired in the July 31, 1969 purchase, respondent allocated none of the sales price because petitioner neither proposed an allocation nor offered any evidence on which an allocation could be based; (3) for the land itself, the March 3 sales contract provided an allocation; and (4) the portion of the sales price that remained unallocated after the above allocations was assigned to the cows and calves. Under the circumstances, we believe that respondent's allocation method is reasonable and, accordingly, we adopt it. We also adopt the amounts of resultant ordinary income and capital gain arising from the sale of the ranch as determined by respondent and not refuted by petitioner. There is one exception. The amount of section 1245 recapture is limited by the amount of depreciation allowed, not by the amount allowable. It the amount of depreciation allowed is less than the amount allowable, then *551 the amount allowed should be taken into account in determining the recomputed basis. Section 1245(a)(2). Here the only depreciation allowed for 1969 and 1970, the years petitioner held the ranch, was $561.85 allowed in 1970. Hence, recapture under section 1245 is limited to that amount. The next issue for decision is whether petitioner is liable for the tax on self-employment income for 1968 and 1970. It is respondent's position that petitioner was in the trade or business of being a promoter and that he derived at least $7,800 of net earnings in 1968 and 1970 from such activity. Petitioner offered no evidence or argument against respondent's determination and, accordingly, we find for respondent. Rule 142(a), Tax Court Rules of Practice and Procedure.
The final issues for decision relate to the applicability of various additions to the tax. 3. Section 6651(a).
Section 6651(a) provides that an addition to the tax shall be imposed in the case of failure to file a return, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Petitioner *552 bears the burden of proof on this issue. Fischer v. Commissioner,50 T.C. 164, 177 (1968). The law is well settled that a Form 1040 which discloses no information relating to a taxpayer's income and deductions is not a "return" within the meaning of the revenue laws. Hatfield v. Commissioner,68 T.C. 895, 898 (1977); Hosking v. Commissioner,62 T.C. 635, 639 (1974). Petitioner filed no returns for 1968 and 1970. The Form 1040 petitioner filed in 1969 stated that petitioner had no income due to illness. While we have concluded that petitioner did in fact have income in 1969 and that his statement is erroneous, still this Form 1040 is a return which purports to disclose the information needed to determine petitioner's tax liability. Consequently we hold that petitioner is liable for the additions to tax under section 6651(a) for 1968 and 1970. 4. Section 6653(a).
Section 6653(a) provides for an addition to tax of five percent of the "underpayment" where any part of such underpayment is due to negligence or intentional disregard *553 of rules and regulations. We have held that the negligence penalty may be assessed in addition to the failure to file penalty. Robinson's Dairy, Inc. v. Commissioner,35 T.C. 601, 609 (1961), affd. 302 F. 2d 42 (10th Cir. 1962). The burden of proof again rests on petitioner, Bixby v. Commissioner,58 T.C. 757, 791 (1972). We have found that petitioner failed to report income for 1968, 1969 and 1970. No acceptable explanation has been offered for this omission. Moreover petitioner offered no explanation why he failed to pay self-employment taxes, failed to keep accurate books and records, or failed to pay estimated taxes. For these reasons we sustain respondent's determination. 5. Section 6654(a).
We also sustain respondent's imposition of the addition to tax under section 6654(a) for failure to pay estimated income tax for 1968 and 1970. The addition is mandatory and unless petitioner shows that he fits within one of the exceptions listed in section 6654(d), it "is imposed whether or not there was reasonable cause for the *554 underpayment." Sec. 1.6654-1(a)(1), Income Tax Regs.; Estate of Ruben v. Commissioner,33 T.C. 1071, 1072 (1960). Petitioner has not shown that he fits within any of the exceptions. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. Includes self-employment tax deficiencies of $499.20 in 1969 and $538.20 in 1970.↩
3. Petitioner and his wife held the Paden ranch for slightly more than seven months. ↩
4. The following is a list of the personal property sold together with the corresponding portion of the sales price allocable to each item and the adjusted basis of each item on the date of sale: ↩
Allocable Item
Sales price
Adjusted basis
Bermuda Sprigger
$ 200.00
$ 174.40
D-8 Caterpillar
6,000.00
5,232.00
All Irrigation Equipment
3,000.00
2,616.00
2-4 wheel trailers
200.00
174.40
1-large hog feeder
100.00
87.20
2-mares & colt
350.00
305.20
1-saddle
80,00
69.75
200-cows plus calves
60,961.50
23,800.00
6-bulls
1,950.00
1,700.40
2000-bales of hay
2,000.00
2,000.00
12-farming pens
0
0
1-house trailer
0
0
1-disc plow
0
0
1-cook stove
0
0
1-refrigerator
0
0
3 miles-4" pipe
0
0
2-water tanks
0
0
1-self feeder
0
0
5. This amount exceeded the original contract price by $1,724.50. This resulted from the contract's understatement of petitioner's note held by the First National Bank of Prague.↩
6. In 1969 petitioner and his family lived on a ranch in Paden, Oklahoma. ↩
7. Petitioner and his wife separated in March 1971.↩
8. Section 6335(a) provides: (a) Notice of Seizure.--As soon as practicable after seizure of property, notice in writing shall be given by the Secretary or his delegate to the owner of the property (or, in the case of personal property, the possessor thereof), or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. If the owner cannot be readily located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address. Such notice shall specify the sum demanded and shall contain, in the case of personal property, an account of the property seized and, in the case of real property, a description with reasonable certainty of the property seized.↩
9. The property was subject to prior liens of $94,000 which the purchaser presumably assumed.↩
10. Section 6331 provides: (a) Authority of Secretary or Delegate.--If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official. If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section. (b) Seizure and Sale of Property.--The term "levy" as used in this title includes the power of distrant and seizure by any means. A levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).↩
11. Petitioner testified that he requested the IRS District Director in Oklahoma City to return his family's personal property. The record does not indicate what, if any, response there was to petitioner's request. Petitioner, however, made no written request pursuant to section 301. 6343-1(b)(2), Proced. & Admin. Regs.; nor is there any evidence that petitioner ever pursued the matter after his initial request. ↩
12. These items include clothes, school books, furniture and personal effects up to $500, and books and tools necessary for petitioner's trade or business. Sec. 6334(a)↩. Presumably petitioner's tax records would fall into this last category.
13. Petitioner spoke to Hill after the June 22 seizure but during the course of that conversation petitioner never mentioned anything about being denied access to his personal property. It appears odd to us why petitioner failed to raise this topic especially considering that Hill was the sole IRS officer in charge of the seizure. ↩
14. On brief petitioner cited two sections of the Internal Revenue Manual claiming that respondent violated them. The two cited sections pertain to the seizure of personal property. Our finding that respondent did not seize petitioner's personal property precludes the application of those sections.↩
15. See section 5342(15), Internal Revenue Manual. The same provision appears in the current Internal Revenue Manual in section 5342.1(18).↩
16. Respondent may use a combination of methods to reconstruct income. See Schwartz v. Commissioner,32 TCM 1071, 42 P-H T.C. Memo. par. 73,226 (1973); Monahan v. Commissioner,27 TCM 1157↩, 37 P-H T.C. Memo. par. 68,234 (1968).
17. On brief petitioner claims that the proceeds from some of the transactions were payable jointly to petitioner and his wife, and that the Paden ranch had been purchased in his wife's name only. Petitioner, however, provided no evidence which would permit us to allocate a portion of the gain to his wife.↩
18. Petitioner held this account with his wife.↩