117 T.C. No. 16

UNITED STATES TAX COURT

JOSEPH D. AND WANDA S. LUNSFORD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18071-99L.                    Filed November 30, 2001.

R issued a notice of intent to levy, and Ps
requested a hearing before an IRS Appeals officer (A)
pursuant to sec. 6330, I.R.C.  In their request Ps
questioned whether there was a valid summary record of
the assessment of the taxes in issue.  A sent a letter
to Ps that enclosed a Form 4340, Certificate of
Assessments and Payments, showing that the assessments
were made and invited Ps to raise additional issues,
but Ps did not do so.  A did not schedule a face-to-
face hearing.  A issued a notice of determination, and
Ps timely petitioned the Tax Court for review.
     <u>Held</u>:  The Tax Court has jurisdiction under sec.
6330(d)(1)(A), I.R.C., based on a valid notice of
determination and a timely filed petition.  In
determining the validity of the notice of determination
for jurisdictional purposes, we do not look behind the
notice to see whether Ps were afforded an appropriate
IRS Appeals hearing.  The notice of determination sent
to Ps was valid on its face, and we have jurisdiction
to review the determination.  <u>Meyer v. Commissioner</u>,
115 T.C. 417 (2000), is overruled to the extent it

requires the Court to look behind the notice of determination to see whether a proper hearing opportunity was given in order to decide whether the notice was valid.

Joyce M. Griggs, for petitioners.

Ross M. Greenberg, for respondent.


OPINION


RUWE, Judge:  This case arises from a petition for judicial review filed under section 6330(d)(1)(A).[1]  The issue for decision is whether this Court has jurisdiction to review respondent's determination to proceed with collection by way of levy.  At the time petitioners filed their petition, they resided in Asheville, North Carolina.  When this case was called for trial, the parties submitted the case fully stipulated.  For convenience, we combine the facts, which are not in dispute, with our opinion.

Section 6331(a) authorizes the Commissioner to levy against property and property rights where a taxpayer fails to pay taxes within 10 days after notice and demand for payment is made. Section 6331(d) requires the Secretary to send notice of an intent to levy to the taxpayer, and section 6330(a) requires the

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code currently in effect, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Secretary to send a written notice to the taxpayer of his right to a hearing. Section 6330(b) affords taxpayers the right to a "fair hearing" before an "impartial" IRS Appeals officer. Section 6330(c)(1) requires the Appeals officer to obtain verification that the requirements of any applicable law or administrative procedure have been met. Section 6330(c)(2)(A) specifies issues that the taxpayer may raise at the Appeals hearing. The taxpayer is allowed to raise "any relevant issue relating to the unpaid tax or the proposed levy" including spousal defenses, challenges to the appropriateness of collection action, and alternatives to collection. Sec. 6330(c)(2)(A). The taxpayer cannot raise issues relating to the underlying tax liability if the taxpayer received a notice of deficiency or the taxpayer otherwise had an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B).

Section 6330(c)(3), provides that a determination of the Appeals officer shall take into consideration the verification under section 6330(c)(1), the issues raised by the taxpayer, and whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary. Section 6330(d)(1) then provides:

> (1) Judicial review of determination.--The person may, within 30 days of a determination under this section, appeal such determination--

> (A) to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter); or

> (B) if the Tax Court does not have jurisdiction of the underlying tax liability, to a district court of the United States.

Thus, if we have general jurisdiction over the type of tax involved, a "determination" by Appeals and a timely petition are the only requirements for the exercise of our jurisdiction under section 6330. Temporary regulations promulgated under section 6330 require that the "determination" by Appeals be issued in the form of a "written" notice. Sec. 301.6330-1T(e)(3), Q&A-E7, Temporary Proced. & Admin. Regs, 64 Fed. Reg. 3411-3412 (Jan. 22, 1999).[2] Thus, we have held that our jurisdiction under section 6330(d)(1) depends upon the issuance of a valid notice of determination and a timely petition for review. Sarrell v. Commissioner, 117 T.C. 122, 125 (2001); Offiler v. Commissioner, 114 T.C. 492, 498 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000).

On April 30, 1999, respondent issued a notice of intent to levy to petitioners. The proposed levy was to collect unpaid

---

[2]H. Conf. Rept. 105-599, at 266 (1998), 1998-3 C.B. 747, 1020, states in pertinent part:

Judicial Review

The conferees expect the appeals officer will prepare a written determination addressing the issues presented by the taxpayer and considered at the hearing. * * * [Accord Goza v. Commissioner, 114 T.C. 176, 181 (2000).]

income taxes of $83,087.85 for the taxable years 1993, 1994, and 1995. On May 24, 1999, petitioners filed a Form 12153, Request for a Collection Due Process Hearing,[3] in which they raised the following issue regarding the validity of the assessments made by respondent:

> I do not agree with the collection action of levy and notice of intent to levy 4-30-99. The basis of my complaint is what I believe to be the lack of a valid summary record of assessment pursuant to 26 CFR §301.6203-1. Without a valid assessment there is no liability. Without a liability there can be no levy, no notice of intent to levy, nor any other collection actions.

On September 2, 1999, the Appeals officer wrote a letter to petitioners indicating that the validity of the assessments had been verified and attached a Form 4340, Certificate of Assessments and Payments, which clearly shows that the assessments in question were made and remained unpaid. The Appeals officer concluded the letter stating: "If you wish to discuss other matters, such as resolution of the liability please contact me by September 16, 1999. Otherwise, we will issue a determination". Petitioners made no response to this letter. No further proceedings or exchange of correspondence occurred prior to the Appeals officer's determination.

---

[3]Various IRS forms refer to the Appeals hearing that is contemplated by sec. 6330(b) as a "collection due process" or "CDP" hearing.

On November 3, 1999, a notice of determination was sent to petitioners by the IRS Appeals Office which sustained the proposed levy.  The notice of determination included findings that:  (1) All procedural, administrative, and statutory requirements were met; (2) the Form 4340 satisfied the requirements of section 6203;[4] (3) petitioners failed to present any collection alternatives; and (4) the proposed levy was justified.  On December 2, 1999, petitioners filed a timely petition to the Tax Court.

Neither petitioners nor respondent has moved or argued that we lack jurisdiction in this case.  However, questions regarding jurisdiction were raised by the trial judge at the time the case was called for trial.  The specific jurisdictional question concerned whether petitioners were offered an opportunity for a hearing with an IRS Appeals officer.  The trial judge's inquiry was based on our opinion in Meyer v. Commissioner, 115 T.C. 417, 422-423 (2000), which held that we lacked jurisdiction under section 6330(d) if the taxpayer was not given an opportunity for an Appeals hearing.

---

[4]Sec. 6203 requires the Secretary to record the liability of the taxpayer and to furnish a copy of the record of assessment to the taxpayer on request.  Sec. 301.6203-1, Proced. & Admin. Regs., provides that an assessment officer shall make the assessment and sign the "summary record of assessment.  The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment."

In Meyer v. Commissioner, supra at 422-423, we looked behind the notice of determination to find that the taxpayer was not offered an Appeals hearing. We then found that the notice of determination was invalid and that the Tax Court was without jurisdiction to review the Appeals officer's determination. Id. For the reasons discussed below, we now conclude that our opinion in Meyer was incorrect.

As a preliminary matter, we point out that this Court should not have decided whether the notice of determination was valid in Meyer v. Commissioner, supra, because we did not have subject matter jurisdiction. We have held that we lack jurisdiction under section 6330(d) when the tax in issue is one over which we normally do not have jurisdiction. See Johnson v. Commissioner, 117 T.C. ___ (2001); Moore v. Commissioner, 114 T.C. 171 (2000). The tax in Meyer v. Commissioner, supra, was a frivolous return penalty over which we normally have no jurisdiction. We therefore had no subject matter jurisdiction under section 6330(d). Van Es v. Commissioner, 115 T.C. 324 (2000). In that situation, section 6330(d) provides that "If a court determines that the appeal was to an incorrect court, a person shall have 30 days after the court determination to file such appeal with the correct court."[5] Thus, in Meyer v. Commissioner, supra, we

---

[5]See True v. Commissioner, 108 F. Supp. 2d 1361 (M.D. Fla. 2000), holding that the district court lacked subject matter
(continued...)

decided an issue regarding the adequacy of the hearing opportunity and its ramifications which should have been considered in the first instance by a district court with subject matter jurisdiction.

Secondly, in <u>Meyer v. Commissioner</u>, <u>supra</u>, our holding that the notice of determination was invalid was improperly predicated on facts regarding procedures that were followed prior to the issuance of the notice of determination rather than on the notice of determination itself.  <u>Id.</u> at 422-423.  Our analysis in <u>Meyer</u> improperly required us to look behind the notice of determination.

In <u>Offiler v. Commissioner</u>, 114 T.C. at 498, we analogized a notice of determination issued pursuant to section 6330(c)(3) to a notice of deficiency issued pursuant to section 6212, and said that the notice of determination is the jurisdictional "equivalent of a notice of deficiency."[6]  In the context of a

---

[5](...continued)
jurisdiction over a sec. 6330 case involving income tax and noting that the taxpayer had 30 days to file in the Tax Court. In <u>True</u>, the taxpayer had not been given an opportunity for an Appeals hearing.  The district court properly deferred consideration of that matter to the Tax Court, which had subject matter jurisdiction.

[6]In <u>Meyer v. Commissioner</u>, 115 T.C. 417, 421 (2000), we correctly stated the role that a notice of determination and timely petition play in our jurisdiction as follows:

> Section 6330(d) imposes certain procedural
> prerequisites on judicial review of collection matters.
> (continued...)

notice of deficiency, we have consistently held that as a general rule we do not look behind the notice to determine its validity. <u>Pietanza v. Commissioner</u>, 92 T.C. 729, 735 (1989), affd. without published opinion 935 F.2d 1282 (3d Cir. 1991); <u>Riland v. Commissioner</u>, 79 T.C. 185, 201 (1982); <u>Estate of Brimm v. Commissioner</u>, 70 T.C. 15, 22 (1978); <u>Greenberg's Express, Inc. v. Commissioner</u>, 62 T.C. 324, 327 (1974). It is well established that the Tax Court will generally examine only the notice of deficiency to determine whether the notice was valid for jurisdictional purposes. See <u>Sealy Power, Ltd. v. Commissioner</u>, 46 F.3d 382, 388 n.25 (5th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1992-168; <u>Clapp v. Commissioner</u>, 875 F.2d 1396, 1402 (9th Cir. 1989).

We believe the same principles are applicable to a section 6330 determination. Our jurisdiction under section 6330(d)(1)(A) is established when there is a written notice that embodies a

<hr>

[6](...continued)
Much like the Court's deficiency jurisdiction, the Court's jurisdiction under section 6330(d) is dependent upon a valid determination letter and a timely filed petition for review. See Rule 330(b). Like a notice of deficiency under section 6213(a), an Appeals Office determination letter is a taxpayer's "ticket" to the Tax Court. See <u>Offiler v. Commissioner</u>, 114 T.C. 492, 498 (2000); see also <u>Mulvania v. Commissioner</u>, 81 T.C. 65, 67 (1983); <u>Gati v. Commissioner</u>, 113 T.C. 132, 134 (1999). Moreover, a petition for review under section 6330 must be filed with the appropriate court within 30 days of the mailing of the determination letter. See <u>McCune v. Commissioner</u>, 115 T.C. 114 (2000).

determination to proceed with the collection of the taxes in issue, and a timely filed petition. To the extent that Meyer v. Commissioner, 115 T.C. 417 (2000), holds that we must first look behind the determination to see whether a proper hearing was offered in order to have jurisdiction, Meyer is overruled.

We are, of course, cognizant of the role stare decisis plays in this Court and in other Federal courts, especially in the context of statutory construction. See, e.g., Sec. State Bank v. Commissioner, 111 T.C. 210, 213-214 (1998), affd. 214 F.3d 1254 (10th Cir. 2000). Nevertheless, when this Court decided Meyer v. Commissioner, supra, lien and levy cases under section 6330 were just starting to reach this Court. In the nascent stages of our section 6330 jurisprudence, we made a decision limiting our jurisdiction. After almost a year of experience in dealing with lien and levy cases, we have come to the conclusion that the jurisdictional analysis in Meyer was incorrect and has resulted in unjustified delay in the resolution of cases. Whether there was an appropriate hearing opportunity, or whether the hearing was conducted properly, or whether the hearing was fair, or whether it was held by an impartial Appeals officer, or whether any of the other nonjurisdictional provisions of section 6330 were properly followed, will all be factors that we must take into consideration under section 6330 in deciding such cases. But none of these factors should preclude us from exercising our

jurisdiction under section 6330(d), in order to resolve the underlying dispute in a fair and expeditious manner.

In the instant case, there is nothing in the notice of determination which leads us to conclude that the determination was invalid. The notice of determination clearly embodies the Appeals officer's determination that collection by way of levy may proceed. Thus, regardless of whether petitioners were given an appropriate hearing opportunity, there was a valid determination and a timely petition. Those are the only statutory requirements for jurisdiction in section 6330(d)(1)(A). Accordingly, we hold that we have jurisdiction to review the determination in this case.

<u>An appropriate order</u>

<u>will be issued</u>.

Reviewed by the Court.

WELLS, COHEN, SWIFT, GERBER, COLVIN, GALE, and THORNTON, <u>JJ</u>., agree with this majority opinion.

HALPERN, J., concurring:  I concur with the majority that we have jurisdiction to hear an appeal from a section 6330(c)(3) determination notwithstanding that no section 6330(b) hearing was held.  I write separately to lend support to the majority's conclusion and to offer some comments concerning our authority to dictate to respondent the nature of the hearing required by section 6330(b).

I.  Jurisdiction

A.  Meyer v. Commissioner

In Meyer v. Commissioner, 115 T.C. 417 (2000), the taxpayers had requested a section 6330(b) hearing.  The Appeals officer, considering the grounds raised by the taxpayers, did not schedule (or offer to schedule) a conference with the taxpayers, but proceeded to issue notices of determination (the notices) that all administrative procedures had been met and respondent would proceed with collection against them for the years in issue.  Id. at 418.  The taxpayers appealed to this Court, and we dismissed for lack of jurisdiction, concluding that the notices were invalid because the Appeals officer had not provided the taxpayers with an opportunity for a hearing "either in person or by telephone" prior to issuing the notices.

The consequences of a dismissal on such grounds are unclear. Section 6330(e) provides for the suspension of collections and the statute of limitations during the pendency of a section

6330(b) hearing and any appeal therefrom.[1]  It does not appear that Congress used the adjective "pending" in section 6330(e)(1) in any special sense, and it is arguable that all section 6330 suspensions end upon our dismissal for lack of jurisdiction of a case in which, pursuant to section 6330(d)(1), we are the only Court to which an appeal may be made.  Moreover, under the last sentence of section 6330(e)(1), a prerequisite to our jurisdiction to enjoin any collection action is the timely filing of an appeal under section 6330(d)(1).  I have found no authority that an appeal can be timely filed with a court that lacks

---

[1]  Sec. 6330(e)(1) provides:

(e)  Suspension of Collections and Statute of Limitations.--

(1) In general.  Except as provided in paragraph (2), if a hearing is requested under subsection (a)(3)(B), the levy actions which are the subject of the requested hearing and the running of any period of limitations under section 6502 (relating to collection after assessment), section 6531 (relating to criminal prosecutions), or section 6532 (relating to other suits) shall be suspended for the period during which such hearing, and appeals therein, are pending.  In no event shall any such period expire before the 90th day after the day on which there is a final determination in such hearing.  Notwithstanding the provisions of section 7421(a), the beginning of a levy or proceeding during the time the suspension under this paragraph is in force may be enjoined by a proceeding in the proper court, including the Tax Court.  The Tax Court shall have no jurisdiction under this paragraph to enjoin any action or proceeding unless a timely appeal has been filed under subsection (d)(1) and then only in respect of the unpaid tax or proposed levy to which the determination being appealed relates.

jurisdiction to hear that appeal.  If it cannot be, then we lack jurisdiction to enjoin any collection action following our dismissal for lack of jurisdiction.

Certainly, section 6330 entitles a taxpayer to a hearing. See sec. 6330(a)(3)(B).  It is a matter of statutory interpretation, however, whether there can be no determination under section 6330(c)(3) (and, thus, no basis for court review) if there is no hearing.  The review of an administrative action of an agency is not a normal task for us.  In a proceeding before the Tax Court to redetermine a deficiency, we find facts de novo. See sec. 6214(a); O'Dwyer v. Commissioner, 266 F.2d 575 (4th Cir. 1959), affg. 28 T.C. 698 (1957); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974).[2]  But see, e.g., section 7429(b)(2)(B), providing for our review of jeopardy levy or assessment proceedings, and section 6404(i), providing for our review of whether respondent's failure to abate interest was an abuse of discretion.  There is an extensive jurisprudence dealing with court review of agency administrative actions.  The Administrative Procedure Act (APA), 5 U.S.C. secs. 551-559, 701-

_____

[2]  In O'Dwyer v. Commissioner, 266 F.2d 575, 580 (4th Cir. 1959), affg. 28 T.C. 698 (1957), the Court of Appeals for the Fourth Circuit stated:  "We agree that the Tax Court is not subject to the Administrative Procedure Act."  That statement was made in the context of the court's stating that, in redetermining a deficiency, the Tax Court is not a reviewing court, reviewing the record of an administrative agency, but, rather, is a court reviewing facts de novo.

706 (1994) (hereafter, sections of which are cited APA), provides the basic structure of Federal administrative law. As discussed immediately below, I believe that various provisions of the APA inform our authority (and our jurisdiction) under section 6330(d)(1)(A). I believe that the APA is persuasive evidence for the proposition that the failure to accord a taxpayer a section 6330(b) hearing does not deprive us of jurisdiction to review a section 6330(c)(3) determination.

B. Administrative Procedure Act

Section 6330(d)(1) establishes our jurisdiction to consider an appeal from an adverse section 6330(c)(3) determination: "[T]he Tax Court shall have jurisdiction with respect to such matter". Sec. 6330(d)(1)(A). Section 6330(d)(1) does not, however, specify our remedial powers in such situation.[3] Such

---

[3] With respect to court review of an Appeals officer's sec. 6330(c)(3) determination, the legislative history of sec. 6330 states that, where the validity of the tax liability was properly at issue in the sec. 6330 hearing, the reviewing court is to review such liability on a de novo basis and, with respect to other aspects of the Appeals officer's determination, the reviewing court is to review such aspects for abuse of discretion. See H. Conf. Rept. 105-599 (1998), 1998-3 C.B. 747, which accompanied H.R. 2676, 105th Cong. (1998), the bill that, when enacted, became the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685. Sec. 3401(b) of such act added sec. 6330; see also Goza v. Commissioner, 114 T.C. 176, 181-182 (2000) (referring to legislative history). The conference report does not specify that, if we find an abuse of discretion, we are to fashion an alternative.

powers are established in part by APA section 706. In pertinent part, APA section 706 provides:

The reviewing court shall –-

       *      *      *      *      *      *      *

  (2) hold unlawful and set aside agency action, findings, and conclusions found to be –-

    (A) arbitrary, capricious, an abuse of discretion, <u>or otherwise not in accordance with the law</u>;

       *      *      *      *      *      *      *

    (D) <u>without observance of procedure required by law</u>;

       *      *      *      *      *      *      *

[Emphasis added.]

If section 6330 requires a hearing before a determination can be made, then we, as a reviewing court, can set aside the determination as "not in accordance with the law" or "without observance of procedure required by law". To do so, however, we must have jurisdiction over the matter. That, of course, is provided by section 6330(d)(1). To hold that we have no jurisdiction to exercise our authority under APA section 706 makes no sense.

The application of APA section 706 is established by other provisions of the APA. In pertinent part, APA section 702 provides: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action

within the meaning of a relevant statute, is entitled to judicial review thereof."  In full, APA section 703 provides:

> The form of proceeding for judicial review is the <u>special statutory review proceeding relevant to the subject matter in a court specified by statute</u> or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction.  If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer.  Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement. [Emphasis added.]

It seems to me that the underscored language fits a section 6330(d)(1) appeal exactly.  If, indeed, a section 6330(b) hearing is a prerequisite to a section 6330(c)(3) determination, then, by all means, we should hold the determination to be unlawful and set it aside (or take other appropriate action).  If we are going to set the determination aside, we should do so in the manner prescribed by Congress (in enacting the APA), and not by disclaiming the jurisdiction to do so.

C.  <u>Conclusion</u>

Notwithstanding the failure of respondent's Appeals officer to offer a taxpayer a hearing before making a section 6330(c)(3) determination, such determination is valid, in the sense that we have jurisdiction under section 6330(d)(1) to review the

determination and, if appropriate, set it aside or take other appropriate action and, if necessary, enjoin any improper collection action by respondent.

II.  Section 6330(b) Hearing

   A.  Introduction

   In Meyer v. Commissioner, 115 T.C. 417 (2000), we dismissed for lack of jurisdiction on the grounds that the Appeals officer had made an invalid determination because he had not provided the taxpayers with an opportunity for a hearing "either in person or by telephone" prior to making that determination.  Id. at 422-423.  Implicit in our disposition of Meyer is some notion of what is normative for a hearing.  Since we found that the Appeals officer had communicated with the taxpayers prior to making his determination, id. at 418, it seems safe to conclude that such communication was in writing and that an implicit holding in Meyer is that (at least without the taxpayer's agreement) an exchange of correspondence does not constitute a hearing.

   I believe that we are in error when we dictate to respondent the particulars of a section 6330(b) hearing.

   B.  The Instant Case

   In the instant case, the majority finds the following:  On account of respondent's issuing a notice of intent to levy, petitioners requested a section 6330(b) hearing.  By the request, petitioners raised as an issue only the validity of the

assessment.  In response to the request, the Appeals officer wrote to them, telling them that the validity of the assessment had been verified and instructing them, if they wished to discuss other matters, to contact him by a date certain, or he would make a section 6330(c)(3) determination.  Petitioners failed to contact him, and he made the specified determination.

Respondent's position is that the exchange of correspondence between petitioners and the Appeals officer satisfied petitioners' right to a section 6330(b) hearing.  Respondent argues that, by correspondence, petitioners informed the Appeals officer of their arguments, the Appeals officer then considered those arguments and, by correspondence, addressed them, and, therefore, petitioners had a hearing, and the Appeals officer's determination should be sustained.

I agree with respondent since, within wide parameters, it is for respondent to decide what constitutes a section 6330(b) hearing.  I disagree with the implicit holding in Meyer v. Commissioner, supra, that an exchange of correspondence cannot constitute a hearing.  Again, the APA and cases construing it are at the center of the relevant jurisprudence.

C.  Administrative Procedure Act

1.  Introduction

The conclusions I reach are that, absent a requirement in section 6330 that a section 6330(b) hearing be "on the record" or

language in section 6330 that can only refer to an oral hearing, we cannot introduce a generally applicable in-person or telephonic (i.e., oral) interview requirement into the proceedings that respondent has established for section 6330 hearings and that respondent has established permissible procedures that were followed in this case.

    2.  <u>Adjudications</u>

The APA governs certain aspects of both rule making and adjudications by Federal agencies. See, e.g., APA secs. 553 (rule making) and 554 (adjudications).[4] APA section 551(7) defines "adjudication" as "agency process for the formulation of an order". In pertinent part, APA section 551(6) defines "order" as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than a rule making". Although many categories of agency actions could fit within the APA definitions of either "adjudication" or "rule making" (APA sec. 551(5)), the determination contemplated in section 6330(c)(3), and which we review pursuant to section 6330(d)(1) is, within the meaning of the APA, an "adjudication".

---

[4] For an authoritative discussion of both rule making and adjudications under the APA, see 1 Davis & Pierce, Administrative Law Treatise, chs. 7 and 8 (3d ed. 1994); see also 2 Davis & Pierce, <u>supra</u> ch. 9, with respect to the constitutional requirement of due process.

APA sections 554 through 557 describe a process of formal adjudication that includes elements of a judicial trial in a civil proceeding. Among those elements are the right to an evidentiary hearing, at which the party "is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts". APA sec. 556(d). APA section 554(a), however, requires an agency to employ this formal trial-type procedure only in an "adjudication required by statute to be determined on the record after opportunity for an agency hearing" (a formal adjudication). No such requirement for an on-the-record hearing appears in section 6330, and we have, by inference, in Davis v. Commissioner, 115 T.C. 35 (2000), concluded that a determination under section 6330(c)(3) is not a formal adjudication. In Davis, we precluded the taking of testimony under oath or the compulsory attendance of witnesses. See id. at 41-42. Those are elements of a formal adjudication specifically provided for in APA section 556(c)(1) and (2). In Davis, we inferred correctly that a determination under section 6330(c)(3) is not a formal adjudication. See United States v. Fla. E. Coast Ry. Co., 410 U.S. 224, 234-238 (1973) (distinguishing between a rule to be made "after hearing" and the requirement that a rule be made "on the record after opportunity for an agency hearing").

If an adjudication is not within the relatively narrow scope of APA sec. 554(a), the only provision of the APA that prescribes procedures applicable to the adjudication is APA sec. 555. That section requires only that an agency (1) permit a party to be represented by counsel or other authorized representative, (2) permit a person to obtain a copy of any data or evidence she provides, and (3) provide a brief statement of the grounds for denying an application or petition.

### 3. Vermont Yankee Nuclear Power Corp.

In Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519 (1978), the Supreme Court held that courts cannot compel an agency to use rule making procedures beyond those required by statute or by the Constitution. In Pension Benefit Guar. Corporation v. LTV Corp., 496 U.S. 633 (1990), the Court made clear that its holding in Vermont Yankee applied to agency adjudications: "Vermont Yankee stands for the general proposition that courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." Id. at 654.

### 4. The Meaning of the Term "Hearing"

In United States v. Fla. E. Coast Ry. Co., supra, the Supreme Court looked to the APA to determine the meaning of the phrase "after hearing" in a statute that empowered the Interstate Commerce Commission, "after hearing", to engage in certain rule

making.  See id. at 225 n.1.  With respect to the APA, the Court said:  "Turning to that Act, we are convinced that the term 'hearing' as used therein does not necessarily embrace either the right to present evidence orally and to cross-examine opposing witnesses, or the right to present oral argument to the agency's decisionmaker."  Id. at 240.  The Court held that the APA requires an agency to use formal rule making procedures, including an oral evidentiary hearing, only when, pursuant to APA section 553(c), rules "are required by statute to be made on the record after opportunity for an agency hearing."  See id. at 240-241.  If the statute requires the agency only to make rules "after hearing", the agency is free to use informal rule making procedures, even if the agency bases its rule on consideration of contested factual issues.

United States v. Fla. E. Coast Ry. Co., supra, involved rule making.  Although the Supreme Court has not yet addressed directly the question of whether the reasoning of Fla. E. Coast Ry. Co. also applies to agency adjudications, Professors Davis and Pierce, in their respected treatise on administrative law (Davis & Pierce, Administrative Law Treatise (3d ed. 1994)), conclude that there are three reasons to believe that it does:  First, the language in APA section 553(c) that triggers the requirement to use formal rule making is identical to the language in APA section 554(a) that triggers a requirement to use

formal adjudication.  In both cases, formal procedures are required only when an agency action is "required by statute to be made on the record after opportunity for an agency hearing".  Second, recent opinions of the Courts of Appeals support the view that the Fla. E. Coast Ry. Co. reasoning, that "hearing" can mean a written exchange of views, applies to adjudications as well as to rule makings.  Third, Fla. E. Coast Ry. Co., considered in conjunction with Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., supra, Pension Benefit Guar. Corporation v. LTV Corp., supra, and a third case, Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), suggest that the Supreme Court would hold that the requirements of a "hearing" can be satisfied by an informal written exchange of views in most adjudicatory contexts.  See 1 Davis & Pierce, supra sec. 8.2 at 381-382, 386-387.

> 5.  Chevron

In Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., supra, the Supreme Court established the framework for judicial review of an agency's interpretation of a statute under its administration.  At the outset, a court must ask whether "Congress has directly spoken to the precise question at issue", id. at 842; if so, then the court "must give effect to the unambiguously expressed intent of Congress" and may not defer to a contrary agency interpretation, id. at 842-843.  If the statute

is "silent or ambiguous with respect to the specific issue", however, the court proceeds to ask "whether the agency's answer is based on a permissible construction of the statute", id. at 843; if so, then the court must defer to the agency's construction. The <u>Chevron</u> framework has been applied in determining that an agency can interpret the term "hearing" to mean a written exchange of views. See, e.g., <u>Chem. Waste Mgmt., Inc. v. U.S. Envtl. Prot. Agency</u>, 873 F.2d 1477 (D.C. Cir. 1989).

### 6. When Formal Adjudication Is Required

With a note of caution, Professors Davis and Pierce reach the following conclusion:

> The sequence of opinions in <u>Florida East Coast</u>, <u>Vermont Yankee</u>, <u>Chevron</u>, and <u>LTV</u> suggests strongly that the Supreme Court is increasingly reluctant to require an agency to use formal adjudicatory procedures unless Congress has explicitly directed an agency to do so, either by requiring the agency to act "on the record" or by describing the nature of the required hearing with language that can only refer to an oral evidentiary hearing. * * *

1 Davis & Pierce, <u>supra</u> sec. 8.2 at 387.[5] I reach the same conclusion. Moreover, we have concluded that section 6330 does not require a formal adjudication (i.e., an on-the-record hearing). See <u>supra</u> sec. II.C.2. (discussion of <u>Davis</u>). Section

---

[5] Professors Davis and Pierce caution: "Some caution is necessary in interpreting and applying this generalization, however, because of the Court's countervailing tendency to interpret ambiguous statutory provisions in a manner that avoids the need to resolve difficult issues of constitutional law." 1 Davis & Pierce, <u>supra</u> sec. 8.2 at 387.

6330 does not contain language that can refer only to an oral evidentiary hearing. That leaves for consideration whether respondent's regulations, sec. 301.6330-1T, Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3405 (Jan. 22, 1999), which fail to accord taxpayers an oral interview, are a permissible construction of the statute under Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., supra. I believe that they are.

### 7. Chevron Analysis

Nothing in the language of section 6330 can be interpreted as Congress's having "directly spoken" to whether a section 6330 hearing must include an oral interview. Moreover, in Davis v. Commissioner, 115 T.C. 35 (2000), we found that Congress intended an informal administrative hearing, of the type that, traditionally, had been conducted by appeals and was prescribed by section 601.106(c), Statement of Procedural Rules. Those procedural rules contemplate that Appeals may grant a conference, but do not require an oral interview. Sec. 601.106(c), Statement of Procedural Rules ("At any conference granted by the Appeals"). Moreover, respondent's Publication 1660 (Rev. 05-2000), Collection Appeal Rights, specifically addresses procedures applicable to a section 6330(b) hearing. The publication states that, at the time a taxpayer requests a section 6330(b) hearing, she must address all of her reasons for disagreeing with the proposed collection action. The publication further states:

"The Office of Appeals will contact you to schedule a hearing. Your hearing may be held either in person, by telephone, or by correspondence."[6]  In the instant case, the exchange of correspondence between the Appeals officer and petitioners, ending with the Appeals officer's offer to discuss other matters constitutes a hearing as contemplated in Publication 1660.

I conclude that section 301.6330-1T, Temporary Proced. & Admin. Regs., <u>supra</u>, is a permissible construction of section 6330.

### 8. Conclusion

As expressed <u>supra</u> section II.C.1., I conclude that we cannot introduce a general oral interview requirement into the proceedings that respondent has established for section 6330(b) hearings, and that respondent has established permissible procedures that were followed in this case.

---

[6]  Chief Counsel Advisory 200123060 (June 8, 2001), referred to by some of the dissenters, states:  "Appeals would strive to grant, at a minimum, face-to-face conferences to all requesting taxpayers."  The advisory states a goal, not a mandate.  The record in <u>Watson v. Commissioner</u>, T.C. Memo. 2001-213, contains a memorandum from respondent's counsel emphasizing that the advisory expresses an aspiration.  Moreover, the usual view of this Court is that even revenue rulings, an official publication of respondent's (which the advisory is not), get no deference, since they are merely opinions of a lawyer in the agency.  See, e.g., <u>N. Ind. Pub. Serv. Co. v. Commissioner</u>, 105 T.C. 341, 350 (1995), affd. 115 F.3d, 506 (7th Cir. 1997).  But see <u>United States v. Mead Corp.</u>, 533 U.S. 218 (2001), for a discussion of the deference, less than <u>Chevron</u> deference, owed to certain agency interpretations of a statute.

D.  Constitutional Due Process

Due process does not require that the taxpayer be accorded an opportunity for an oral hearing prior to respondent enforcing its collection proceedings.  Prior to 1998, taxpayers did not have the right to any form of a hearing before collection actions were taken.  That pre-1998 collection process was challenged by taxpayers on constitutional due process grounds.  The Supreme Court, however, held that respondent's administrative lien and levy procedures did not violate constitutional due process standards.  See Phillips v. Commissioner, 283 U.S. 589, 595 (1931), where the Supreme Court stated:

> The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled.  Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained.

Id. at 595 (fn. ref. omitted); see also, e.g., Tavares v. United States, 491 F.2d 725 (9th Cir. 1974) (no requirement that judicial hearing be held prior to levy).

However, even if due process required a hearing prior to collection, respondent is not necessarily obligated to provide an oral hearing.  ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'")  Mathews v. Eldridge, 424 U.S. 319, 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

In Eldridge, the Supreme Court held that the decision to terminate disability benefits based on written evidence did not violate the recipient's right to due process.  What was particularly significant to the Court in making its determination that an oral hearing was not required was that the decision to terminate disability benefits generally does not involve issues of veracity and credibility.  Id. at 343-345.  Likewise, the kinds of issues that a taxpayer may raise at a section 6330 hearing, such as collection alternatives, are generally not issues that require the Appeals officer to evaluate the taxpayer's veracity or credibility.    "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" Id. at 334, quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  In light of the fact that the taxpayer has the opportunity for judicial review, due process does not require that the section 6330 hearing be oral.

WHALEN, BEGHE, and THORNTON, JJ., agree with this concurring opinion.

BEGHE, <u>J</u>., concurring:  I am in complete agreement with the decisions in this case to take jurisdiction and to uphold respondent's determination and authority to proceed with the levy.  For the reasons summarized in my dissent in <u>Johnson v. Commissioner</u>, 117 T.C. ___ (2001), I disassociate myself from the comments in the majority opinion herein, <u>Lunsford v. Commissioner</u>, 117 T.C. ___ (2001) (jurisdictional issue slip op. at 7-8) regarding jurisdiction under section 6330(d) when the underlying tax is one over which we normally lack jurisdiction.

HALPERN, <u>J</u>., agrees with this concurring opinion.

FOLEY, J., dissenting:  I respectfully disagree with the majority's analysis and holding.

In order to assert jurisdiction, deny petitioners their statutorily mandated hearing, and expedite the collection process, the majority have bifurcated this case into two opinions, both of which obfuscate the issues, ignore an unambiguous statute, and avoid addressing the most critical issue:  Does the exchange of correspondence between respondent and petitioners constitute the hearing required by section 6330(b)(1)?  Prior to overruling Meyer v. Commissioner, 115 T.C. 417 (2000), and taking jurisdiction, the majority must first answer this question.  The majority did not do so.  Undaunted by the facts and the law, the majority usurp jurisdiction over this matter and simply assert that, regardless of whether there was a hearing, the purported determination is "valid" and "we have jurisdiction".  Majority op. p. 11.  Under the majority holding, virtually any piece of paper entitled "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330" confers jurisdiction on this Court and may ultimately deprive the taxpayer of his statutory right to a hearing.

1.  The Meyer Holding Is Correct

In Meyer v. Commissioner, supra, the Appeals officer did not offer the taxpayers a hearing, yet proceeded to issue a

determination[1] letter. We held in <u>Meyer</u> that the failure to offer a hearing invalidated the determination and, thus, prevented us from having jurisdiction over the case. In <u>Meyer</u> we were correct in relying on <u>Offiler v. Commissioner</u>, 114 T.C. 492, 497 (2000), and stating: "section 6330(b) contemplates that an Appeals Office hearing, if duly requested by the taxpayer, must precede the issuance of a determination letter." <u>Meyer v. Commissioner</u>, <u>supra</u> at 422. Because conducting a hearing is so fundamental to section 6330, the failure to do so precludes issuance of a determination under section 6330, <u>Offiler v. Commissioner</u>, <u>supra</u> at 497-498, and invalidates any purported determination.

We have no jurisdiction over, and may not adjudicate, a matter if there has been no hearing. Section 6330(b)(1) is unambiguous.[2]

---

[1]References to a "determination" are not intended to imply whether it is a determination that meets the requirements of sec. 6330(c), (d), and (e).

[2]When interpreting an unambiguous statute, it is not necessary to consider the legislative history. Nevertheless, we note that the legislative history accompanying sec. 6330 further supports our position. Congress promulgated sec. 6330 to establish "formal procedures designed to insure due process where the IRS seeks to collect taxes by levy". S. Rept. 105-174, at 67 (1998), 1998-3 C.B. 537, 603. The Senate Finance Committee stated that the Commissioner would, pursuant to sec. 6330, be required to "afford taxpayers adequate notice of collection activity and a meaningful hearing before the IRS deprives them of their property." <u>Id.</u>; see also H. Conf. Rept. 105-599, at 263 (1998), 1998-3 C.B. 747, 1017 ("If * * * the taxpayer demands a hearing, the proposed collection action may not proceed until the hearing has concluded and the appeals officer has issued his or her determination."). The temporary regulations relating to sec. 6330 are fully consistent with the legislative history of the
(continued...)

This section provides that "If the person requests a hearing * * *, such hearing <u>shall</u> be held by the Internal Revenue Service Office of Appeals".[3] (Emphasis added.) The entire statutory scheme of section 6330 contemplates that there can be a determination only after a hearing is held. The first reference in section 6330 to the "determination" is in paragraph (3) of subsection (c) entitled "Matters considered at hearing". Indeed, section 6330(d), which provides for the taxpayer to appeal a determination issued pursuant to section 6330(c)(3) to this Court (or in certain cases to the District Court), is entitled "Proceeding after hearing". See <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 234 (1998)(stating that the heading of a section is a tool available for the resolution of a doubt about the meaning of a statute).

The determination is the end product of the hearing process. Thus, it is contrary to section 6330 to conclude that a purported determination, prepared without the benefit of a hearing, is valid. In short, either there can be no determination without a hearing or

---

[2](...continued)
statute. Sec. 301.6330-1T(d)(1), Proced. & Admin. Regs., 64 Fed. Reg. 3410 (Jan. 22, 1999) ("If a taxpayer requests a CDP hearing under section 6330(a)(3)(B) * * *, the CDP hearing will be held with Appeals.").

[3]Any reference to a request for a hearing shall be considered a reference to a request meeting the requirements of sec. 6330(a)(3)(B) (i.e., a timely request) unless otherwise stated.

any purported determination is invalid.  In either case, the Court simply does not have jurisdiction.

Offiler v. Commissioner, supra, provides the basis upon which Meyer v. Commissioner, supra, was decided.  In Offiler, the taxpayer did not timely request a hearing under section 6330.  We held that "Because no section 6330 hearing was requested, Appeals made no determination pursuant to section 6330(c)[(3)]", Offiler v. Commissioner, supra at 497, and therefore we did not have jurisdiction under section 6330(d).  Id. at 498.

Kennedy v. Commissioner, 116 T.C. 255 (2001), and Moorhous v. Commissioner, 116 T.C. 263 (2001), also provide strong support for the holding in Meyer.  The Court in both Kennedy and Moorhous relies on Offiler for its conclusion in each of those cases that (1) because the taxpayer failed to request timely an Appeals Office hearing, (2) the Appeals Office was not required to conduct such a hearing, and (3) the so-called decision letter that the Appeals Office issued "was not, and did not purport to be, a determination letter pursuant to section 6320 or section 6330."  Moorhous v. Commissioner, supra at 270; Kennedy v. Commissioner, supra at 263.

Implicit in the holdings of Offiler, Kennedy, and Moorhous  is that the Appeals Office may make the determination under section 6330(c)(3) only after a taxpayer requested hearing is held.  See Offiler v. Commissioner, supra at 497; Kennedy v. Commissioner, supra at 263; Moorhous v. Commissioner, supra at 270.  If a

taxpayer does not request a hearing, obviously no hearing is held, and there can be no determination issued pursuant to section 6330(c)(3). If a taxpayer requests a hearing, and the Appeals Office does not hold such a hearing, the Appeals Office may not issue a determination pursuant to section 6330(c)(3), as was the case in Offiler, Kennedy, and Moorhous, or if the Appeals Office purports to issue a determination pursuant to section 6330(c)(3), any such purported determination is not valid. Only after a hearing is held may a determination be issued. See sec. 6330(c)(3). Only after such a hearing is held and after such a determination is made may a taxpayer appeal that determination to this Court (or in certain cases to the District Court). See sec. 6330(d), entitled "Proceeding after hearing" (emphasis added).

2. Rationale for Holding Is Unpersuasive

In tandem, the majority's holdings in Lunsford v. Commissioner, 117 T.C. ___ (2001) (Lunsford II), and this case are groundless assertions of jurisdiction and authority. The majority attempt to justify their holding that we have jurisdiction by asserting that an inquiry into whether the Appeals Office failed to hold a hearing requested by the taxpayer is an exercise of "looking behind" the notice of determination. Majority op. pp. 8-10. They assert that to "look behind" the notice of determination to assess its validity is contrary to case law regarding the validity of a notice of deficiency. Id.

Our jurisprudence relating to the validity of notices of deficiency is not applicable to this case. Here we have an unambiguous statute that requires respondent, upon a taxpayer's request, to hold a hearing. If the hearing is not held there can be no determination, or any purported determination is invalid. Assuming arguendo that the majority were correct in relying on the jurisprudence relating to the validity of notices of deficiency, the majority may not rely only on certain cases to the exclusion of others where we have analyzed the facts and circumstances surrounding the issuance of a notice of deficiency. Those cases include instances where the tax was assessed and paid at the time the notice of deficiency was issued, <u>Estate of Crawford v. Commissioner</u>, 46 T.C. 262 (1966), where the Court must determine whether the notice was sent to the last known address of the taxpayer, <u>Abeles v. Commissioner</u>, 91 T.C. 1019, 1035 (1988), and affected items cases where partners failed to receive notification of the underlying partnership proceeding as required by section 6223(a), <u>Crowell v. Commissioner</u>, 102 T.C. 683 (1994). Applying the foregoing jurisprudence, when considering whether the notice of determination is sufficient to grant us jurisdiction, it is necessary and appropriate to assess whether petitioners had a hearing.

3. <u>The Stare Decisis Doctrine Is Violated</u>

The majority are so determined to expedite the collection process, they opt to overrule <u>Meyer v. Commissioner</u>, 115 T.C. 417 (2000), sua sponte. The parties do not question, and have not briefed, the rule established by <u>Meyer</u>. Moreover, in overruling <u>Meyer</u> the majority ignore existing case law (i.e., <u>Offiler</u>, <u>Moorhous</u>, and <u>Kennedy</u>) and show no regard for stare decisis:

> the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. That doctrine permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact. * * * any detours from the straight path of <u>stare decisis</u> in our past have occurred for articulable reasons, and only when the Court has felt obliged "to bring its opinions into agreement with experience and with facts newly ascertained." <u>Burnet v. Coronado Oil & Gas Co.</u>, 285 U.S. 393, 412, 52 S.Ct. 443, 449, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting). [<u>Vasquez v. Hillery</u>, 474 U.S. 254, 265-266 (1986).]

There are no articulable reasons for overturning <u>Meyer</u>, except the majority's desire to relieve respondent of the burden of holding hearings for those taxpayers respondent and the Court deem to have meritless arguments. See Lunsford II ("we do not believe that it is either necessary or productive to remand this case"). The majority's only explicit justification for ignoring the doctrine of stare decisis is that <u>Meyer v. Commissioner</u>, <u>supra</u>, "has resulted in unjustified delay in the resolution of cases." Majority op. p. 10. "Unjustified delay" from whose perspective?

The "delay" was <u>created by the Appeals officer's failure</u> to follow the section 6330(b)(1) mandate to hold a hearing. Moreover, in a case where a taxpayer maintains a proceeding in the Court primarily for delay, we are authorized to impose a penalty under section 6673(a)(1).

Although the majority state that <u>Meyer</u> was decided "in the nascent stages of our jurisprudence", majority op. p. 10, there are no new experiences or newly ascertained facts that would warrant revisiting the jurisdictional issue in <u>Meyer</u>. See <u>Burnet v. Commissioner</u>, 285 U.S. 393, 412 (1932). <u>Meyer</u> was decided less than 1 year ago, yet an indeterminate number of case dispositions (i.e., by way of settlement and orders) have relied on it. The Court's flip-flopping creates unnecessary and unwarranted instability in the law.

In sum, the determination is the end product of the hearing process. Either there can be no determination without a hearing or any purported determination is invalid. The Court simply does not have jurisdiction.

CHIECHI, LARO, VASQUEZ, and MARVEL, <u>JJ</u>., agree with this dissenting opinion.

VASQUEZ, J., dissenting:  I agree with Judge Foley's dissent; however, I write separately to emphasize certain points.

The majority's opinion in this case is at best dicta and at worst an advisory opinion.  Rather than finding as a fact whether or not petitioners received a hearing before an Appeals officer, the majority avoids this important issue.  If petitioners received a hearing, then the majority's discussion of Meyer v. Commissioner, 115 T.C. 417 (2000), is dicta.  We should not be deciding the issue of what happens if there is no hearing if these are not the facts of this case.

As recently as August 2001, we held:  "Section 6330(d) provides for judicial review of the determination resulting from the section 6330(b) hearing."  Watson v. Commissioner, T.C. Memo. 2001-213 (emphasis added).  In the past few months, the rule that a taxpayer must have a section 6330 hearing prior to judicial review has not proven to defy practical workability, related principles of law have not so far developed as to have left the old rule no more than a remnant of abandoned doctrine, and facts have not so changed as to have robbed the old rule of significant application or justification.  Planned Parenthood v. Casey, 505 U.S. 833, 854-855 (1992) (citations omitted).

Furthermore, stare decisis assumes increased importance when the antecedent case involved the construction of a statute. Brewster v. Commissioner, 607 F.2d 1369, 1373-1374 (D.C. Cir.

1979), affg. 67 T.C. 352 (1976).  In such a case, Congress can cure any error made by the Court, and until it does the bar and the public are justified in expecting the Court, except in the most egregious cases, not to depart from the previous interpretation. Hesselink v. Commissioner, 97 T.C. 94, 100 (1991); Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406-408 (1932) (Brandeis, J., dissenting).

Additionally, in illustrating the provisions relating to our jurisdiction, the Temporary Treasury Regulations provide:

> Q-F5.  What issue or issues may the taxpayer raise before the Tax Court or before a district court if the taxpayer disagrees with the Notice of Determination?

> A-F5.  In seeking Tax Court or district court review of Appeal's Notice of Determination, the taxpayer can only ask the court to consider an issue that was raised in the taxpayer's CDP hearing.

Sec. 301.6330-1T(f)(2) Q&A-F5, Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3412 (Jan. 22, 1999) (emphasis added).  Thus, if there is no hearing there are no issues for us to review.

Section 6330(e) further demonstrates the problems associated with taking jurisdiction when a taxpayer did not receive a section 6330 hearing.  Section 6330(e)(1) provides that "if a hearing is requested under subsection (a)(3)(B), the levy actions which are the subject of the requested hearing * * * shall be suspended for the period during which such hearing, and appeals therein, are pending."  Collection, therefore, cannot proceed until there has

been a hearing.  If the IRS is prevented by statute from collecting

because the levy action is suspended until there is a hearing, then

what will the IRS be able to do after we render our opinion?

Nothing--because there was no hearing.

FOLEY, <u>J</u>., agrees with this dissenting opinion.