T.C. Memo. 2002-195

UNITED STATES TAX COURT

THOMAS R. HOCHSCHILD, SR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10417-00L.                    Filed August 7, 2002.

Thomas R. Hochschild, Sr., pro se.

<u>Stephen J. Neubeck</u>, for respondent.


MEMORANDUM OPINION

GERBER, <u>Judge</u>:  This case arises from a petition for
judicial review, under section 6330(d)(1)(A),[1] of respondent's
decision to proceed with collection.  The issue we consider is:

_____

[1] All section references are to the Internal Revenue Code in
effect for the years in issue.

Whether it was an abuse of discretion for respondent to decide to proceed with collection by means of a notice of levy.

Background

Petitioner resided at Middleberg Heights, Ohio, at the time his petition was filed. Petitioner failed to file 1989, 1990, and 1991 Federal income tax returns. Petitioner advanced, as the reason for failing to file, his belief that the Internal Revenue Service (IRS) would use the information against petitioner in his litigation with the National Labor Relations Board (NLRB). Petitioner's litigation with the NLRB is not related to petitioner's section 6330 hearing.

Petitioner is a Vietnam veteran and has been diagnosed by the Department of Veterans Affairs as "suffering from severe, chronic Post Traumatic Stress Disorder, a psychiatric condition which developed as a result of * * * [his] combat experience during the Vietnam war." He also suffers from a marked hearing impairment.

During the early 1990s, petitioner, as the president of Crystal Window Cleaning Co., was involved in an injunction proceeding concerning the NLRB's charges of unfair labor practices. Injunctions had been granted against petitioner and his company ordering that certain "anti-union behavior" be discontinued. Petitioner was found in civil contempt for refusal to comply with various court orders, and, ultimately, a jury

found petitioner to be in criminal contempt for which he was imprisoned.

Based on petitioner's allegations that were contained in his appeal of the contempt conviction, he believed that the Assistant U.S. Attorney, Federal District Court, and many others were involved in a conspiracy against him. In some manner, petitioner is convinced that the IRS is also conspiring against petitioner.

After petitioner failed to file returns, respondent's agent attempted to elicit returns from petitioner, but none were forthcoming. Accordingly, respondent prepared substitute returns based on Forms 1099 and W-2, Wage and Tax Statement, received from Crystal Window Cleaning Co., and Hochschild Management, both of which are petitioner's companies. On November 5, 1993, respondent mailed, via certified mail, a statutory notice of deficiency to petitioner, at his last known address containing the determination that petitioner had income tax deficiencies and additions to tax as follows:

| | | Additions to Tax | |
|------|------------|------------------|--------------|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) |
| 1989 | $15,201 | $2,588 | $94 |
| 1990 | 12,254 | 2,001 | 494 |
| 1991 | 15,223 | 2,728 | 600 |

After two attempts at delivery, the U.S. Postal Service returned the notice of deficiency, stamped "unclaimed" to respondent.

Petitioner did not file a petition, and respondent assessed the deficiencies and began with collection procedures. Following

petitioner's failure to pay the assessed liabilities, respondent issued a Collection Due Process Notice and a Notice of Intent to Levy and Notice of Your Right to Hearing related to petitioner's 1989, 1990, and 1991 tax years. On December 28, 1999, petitioner submitted a timely request for a section 6330 hearing.

In a letter that was dated November 16, 1999, and received by respondent on December 17, 1999, petitioner formally requested information pertaining to respondent's determination under the Freedom of Information Act (FOIA). Petitioner's request was denied due to his refusal or failure to agree to pay for copy costs.

In a July 20, 2000, letter, Appeals Officer Carolyn Ratzman proposed an August 22, 2000, conference with petitioner and invited him to reschedule if that date was inconvenient. Petitioner, in a July 26, 2000, letter, informed Ms. Ratzman that he had not requested a conference and explained that he would not be able to attend a conference due to his disability. Petitioner further explained that he was attempting to obtain information under the FOIA concerning respondent's determination of his liabilities.

In an August 25, 2000, letter, responding to petitioner's July 26, 2000, letter, Ms. Ratzman offered petitioner a conference by telephone. In that same letter, Ms. Ratzman also informed petitioner that his request for information under the

FOIA had not been acted upon because more information was necessary to process the request; i.e., petitioner had not agreed to pay for the cost of copies. Along with the offer of a conference by telephone, Ms. Ratzman enclosed a copy of the statutory notice concerning the 1989, 1990, and 1991 liabilities. Ms. Ratzman also warned petitioner that if "[he did not] * * * contact me by September 8, 2000, I will assume you no longer wish to pursue this matter with Appeals. Your case will be closed and a notice of determination issued."

Petitioner took no action, and, on September 28, 2000, respondent mailed petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (the lien or levy determination), notifying petitioner of the determination to proceed with collection of the 1989, 1990, and 1991 income tax liabilities. On October 4, 2000, petitioner timely petitioned this Court for review of respondent's determination under section 6330(d)(1).

Petitioner's case was scheduled for trial at the February 11, 2002, Columbus, Ohio, trial session. Immediately before the 10:00 a.m. calendar call, petitioner became agitated, which precipitated a conference in chambers with petitioner, respondent's counsel, and the trial Judge. During the chambers conference, petitioner became highly agitated, and he stated that he was unable to participate in a trial. Accordingly, the Court

filed petitioner's trial memorandum as "Petitioner's Memorandum Brief", and petitioner was ordered to file any supplemental information and/or arguments by March 28, 2002. Respondent was ordered to file a reply in the form of a brief by April 29, 2002. On June 3, 2002, petitioner's unsolicited response to respondent's reply brief was received in the form of a 1-page letter dated May 12, 2002.

Discussion

We have jurisdiction over this matter because petitioner filed a timely petition for review in response to respondent's valid notice of determination to proceed with collection. Sec. 6330(d)(1); Lunsford v. Commissioner, 117 T.C. 159 (2001); Sarrell v. Commissioner, 117 T.C. 122 (2001); Offiler v. Commissioner, 114 T.C. 492, 498 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000).

Where the Commissioner intends to levy against property and property rights of a taxpayer to collect an unpaid tax liability, section 6331(d) requires that the taxpayer be notified of the intent to levy. In addition, section 6330(a) requires that a written notice be sent to the taxpayer, advising of the right to a hearing.

Section 6330(b) affords taxpayers the right to a fair hearing before an impartial IRS Appeals officer. Section 6330(c)(1) requires the Appeals officer to obtain verification

that applicable legal requirements and/or administrative procedure have been met.  Section 6330(c)(2)(A) details issues that may be raised by a taxpayer at the hearing.  The taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy" including spousal defenses, challenges to the appropriateness of collection action, and alternatives to collection.  Sec. 6330(c)(2)(A).  Issues relating to the underlying tax liability may not be raised if the taxpayer has received a notice of deficiency or the taxpayer otherwise had an opportunity to dispute the tax liability.  See sec. 6330(c)(2)(B).

Petitioner, in his petition to this Court, alleged that, during 1999, he was notified that he owed income tax and, to date, he was not able to find out any factual information, even though he had filed a request under the FOIA.  Petitioner alleged that the "errors by the I.R.S. is that there are no Factual evidence in the claim against me, No persons name has come up that I can find out how the claim came to be and for all practical purpose[s] it seems that the figures used were made up out of thin air."  Petitioner also made an allegation about his disabled condition and status as a disabled veteran.

In subsequent documents filed with the Court, the gist of petitioner's contentions concerned his status as a disabled veteran and his anger and fears connected with his legal

controversy and incarceration involving the NLRB.  For reasons that petitioner has not explained, he believes that the outstanding tax liabilities determined by respondent are somehow connected to the NLRB matter and that respondent has joined in a Governmentwide conspiracy against him and his family.

Considering petitioner's contentions, we proceed to consider whether, in the circumstances of this case, there was an abuse of discretion by respondent in deciding to proceed with collection.

1. Was Petitioner Entitled To Challenge the Underlying Tax Liability?

Under section 6330(c)(2)(B), a taxpayer may challenge the "underlying tax liability * * * if * * * [the taxpayer] did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Respondent mailed, by certified mail, a statutory notice to petitioner, but petitioner did not claim the notice after several attempts at delivery by the U.S. Postal Service.  Section 6330(c)(2)(B) generally conditions the right to challenge the underlying tax liability on a taxpayer's not receiving a notice or having an opportunity to dispute the liability.

In this case, respondent mailed a statutory notice to petitioner, but it was not claimed.  So we must consider whether that situation reconciles with the section 6330(c)(2)(B) condition that a taxpayer "did not receive any statutory notice

of deficiency * * * or did not otherwise have an opportunity to dispute such tax liability." In the context of a section 6330 proceeding, we have held that a taxpayer cannot circumvent the condition by deliberately refusing delivery of the statutory notice. See Sego v. Commissioner, 114 T.C. 604 (2000); Baxter v. Commissioner, T.C. Memo. 2001-300. In those cases, it was shown that the taxpayers intentionally refused delivery. In this case, respondent has sufficiently shown that a notice was mailed to petitioner's last known address and that the U.S. Postal Service made several attempts at delivery, but the notice was unclaimed. That evidence is sufficient to raise a presumption of official regularity and of delivery. See Sego v. Commissioner, supra at 610-611.

In addition, petitioner does not argue that he was deprived of the opportunity to contest the statutory notice in court. Instead, petitioner argues that respondent had no basis for issuing the notice. Petitioner's argument contains the assumption that the notice was issued, but that it is without merit or substance. Accordingly, we treat this situation as one where petitioner had the opportunity to contest respondent's determination and chose not to. In the context of a section 6330 hearing, the question of whether the failure to challenge was deliberate is irrelevant. The language of the statute only

requires that the taxpayer "have an opportunity to dispute such tax liability."

2. Petitioner's Arguments Concerning the Underlying Tax Liability.

As outlined previously, petitioner, contends that he was not able to find out any factual information, even though he had filed a request under the FOIA, and that he questions the validity or substance of respondent's determination. Petitioner also contends that respondent has conspired with the NLRB as part of a Governmentwide conspiracy against him and his family.

Regarding petitioner's first contention, respondent's Appeals officer, in a letter to petitioner, provided him with an explanation of the source of the income adjustments determined in the statutory notice. She explained that the income items were based on Forms W-2 and 1099 from petitioner's own companies. Petitioner wishes to ignore that information and instead argues that respondent has failed to provide the information he asked for in his FOIA request. Again, respondent's Appeals officer explained to petitioner, by letter, that his request had not been honored because he refused or failed to agree to pay the required fee.

Petitioner's FOIA request was asking for the same information as was provided by respondent's Appeals officer; i.e., the basis for the income tax liability. The documents upon

which respondent's determination was based were documents sent by petitioner's companies to respondent. Accordingly, even if petitioner were entitled to challenge the merits of the underlying tax liability, respondent has provided information upon which the liability is based, and petitioner has shown no error in respondent's determination.

Petitioner's contention that respondent's tax determination is part of a Governmentwide conspiracy against him has not been shown to be anything more than a figment of petitioner's imagination.

Petitioner, although invited on several occasions for a face-to-face hearing or one by telephone, did not take advantage of the offer. It is again noted that respondent's failure to answer petitioner's FOIA request was due to a procedural deficiency in petitioner's request. More importantly, respondent's Appeals officer provided petitioner with available information in response to the questions and inquiries raised by petitioner in writing.

In view of the foregoing, it appears that there has been no abuse of discretion and that there is no reason why respondent may not proceed with the proposed collection activity.

<u>Decision will be entered for respondent</u>.